USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIX FINANCIAL SERVICES, INC.
formerly known as ORIX CREDIT
ALLIANCE, INC.,

    Plaintiff,

- against -

AUDREY ROTH,

    Defendant.

**OPINION AND ORDER**

06 Civ. 2069(PKL)

**APPEARANCES**

STEIN & STEIN
One Railroad Square
Haverstraw, NY 10927
William M. Stein, Esq.

<u>Attorneys for Plaintiff</u>

AUDREY ROTH
Route 1, Box 118
Sallisaw, OK 74955

<u>Pro Se Defendant</u>

**LEISURE, District Judge:**

<u>Pro</u> <u>se</u> defendant Audrey Roth ("Roth") moves this Court to dismiss the Complaint filed against her by plaintiff Orix Financial Services, Inc. ("Orix"). Orix alleges that Roth failed to perform obligations under a personal guarantee. Roth seeks dismissal on the basis that the claims are untimely and the personal guarantee is invalid. For the following reasons, Roth's motion is DENIED.

## BACKGROUND

Orix, a New York corporation, brings this diversity action against Roth, a resident of Oklahoma. (Complaint ¶¶ 2-3.) Orix is the successor-in-interest to the rights under two promissory notes (the "Notes") in the amounts of $119,760 and $76,650, respectively. Roth's husband, Michael Roth, doing business as R&M Trucking, made the Notes in favor of Orix to evidence loans for the financing and acquisition of certain commercial equipment. (<u>Id.</u> ¶¶ 5, 12.) Roth allegedly executed a personal guarantee (the "Guaranty"), wherein she agreed to be obligated for the performance of all obligations due by R&M Trucking. (<u>Id.</u> ¶¶ 6, 18.) Orix claims that R&M Trucking defaulted on the Notes, whereupon Orix took possession of certain of the financed equipment and sold it at auction.

1

Orix alleges that, with respect to the first note entered into on March 20, 2000 ("Note 1"), defendant owes Orix $90,755.42 (which includes the unpaid balance under the note and certain late charges, less the resale cost of the repossessed equipment), attorneys' fees of $18,151.08, and additional default interest. (Id. ¶¶ 12-13.) With respect to the second note entered into on April 20, 2000 ("Note 2"), Orix alleges that defendant owes $49,460.33 (which includes the unpaid balance of the note, certain late charges, and the costs of attempted resale of the repossessed equipment), attorneys' fees of $9,892.07, and additional default interest. (Id. ¶¶ 17-18.)

Orix filed this action on March 16, 2006. After answering the Complaint on September 7, 3006, Roth filed the instant motion on November 3, 2006. Orix filed its opposition papers on December 6, 2006 and Roth filed a reply affidavit on December 20, 2006.

**DISCUSSION**

Roth seeks dismissal of the claims against her on two grounds. First, Roth argues that the statute of limitations has expired as to the claims against her. Second, Roth asserts that the Guaranty is unenforceable because the notary on the Guaranty was invalid and Roth's signature on the Guaranty was forged.

2

I. <u>Statute of Limitations</u>

Roth's motion regarding the statute of limitations will be construed as a motion to dismiss for "failure to state a claim upon which relief can be granted," pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." <u>Festa v. Local 3 Int'l Bhd. of Elec. Workers</u>, 905 F.2d 35, 37 (2d Cir. 1990). In so doing, the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." <u>Tarshis v. Riese Org.</u>, 211 F.3d 30, 35 (2d Cir. 2000) (internal citations omitted). As such, a motion to dismiss will be denied "unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." <u>Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

Roth states that "[a]ccording to [the] Pro Se office[,] Forms Statute of Limitation is for three years. It has been longer than three years with no contact from

3

Orix." (Roth Aff.) Under New York law,[1] a cause of action upon a guaranty is governed by the six-year statute of limitations period that is applicable to contracts. See N.Y. C.P.L.R. § 213(2); see also China Trust Bank (U.S.A.) v. Pinter, No. 04 Civ. 5331, 2007 WL 922421, at *6 (E.D.N.Y. Mar. 26, 2007); Orix Credit Alliance, Inc. v. Horten, 965 F. Supp. 481, 484 (S.D.N.Y. 1997). This limitations period begins to run when the debtor defaults on the underlying obligation. See Horten, 965 F. Supp. at 484. Here, Orix asserts that R&M Trucking defaulted on its obligations for Note 1 on July 3, 2001. (Complaint ¶ 8.) Orix filed this action on March 16, 2006, which was well before the statute of limitations would have expired in July 2007. Therefore, Roth's motion to dismiss the claims against her as untimely is DENIED.

II. Validity of the Guaranty

Roth also moves for dismissal of the claims against her on the basis that the Guaranty is unenforceable because an invalid notary was used and Roth's signature was forged.

A. Conversion to Summary Judgment

Both Roth and Orix provided documents in support of their motion papers that were not attached to the

---

[1] The Guaranty states that it "shall be interpreted according to the laws of the State of New York." (Degrave Aff. Ex. D.)

4

Complaint. When a party introduces matters extraneous to the pleadings, the Court must convert the motion to dismiss into a motion for summary judgment or exclude the extraneous documents from consideration. See Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988); see also Fed. R. Civ. P. 12(b). When a court converts a Rule 12(b)(6) motion to a motion for summary judgment, Rule 12(b) requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

A district court need not notify the parties that it is converting a Rule 12(b)(6) motion into a motion for summary judgment when the non-movant should have reasonably recognized the possibility that the motion might be converted into one for summary judgment. See Groden v. Random House, Inc., 61 F.3d 1045, 1052-53 (2d Cir. 1995). In this case, non-movant Orix should have reasonably recognized the possibility that Roth's motion might be converted into one for summary judgment. Orix had sufficient opportunity to present evidence outside the pleadings and, in fact, did so. In opposition to Roth, Orix submitted copies of a March 2000 verification letter to Roth, company computer records, and a September 2002

letter to Roth, along with mailing receipts. (Degrave Aff. Exs. E-G.) "A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985). Here, both parties presented relevant material outside the pleadings. Therefore, the Court will consider the additional supporting materials and convert Roth's motion to dismiss to a motion for summary judgment pursuant to Rule 56.[2]

B. Summary Judgment Standard

District courts are directed to issue summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d

---

[2] The Court notes, however, that even if it did not convert Roth's motion to one for summary judgment, and excluded the extraneous papers as required on a motion to dismiss, her motion still would be denied. See, e.g., Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (noting that if defendants could not establish their claim "on a presentation that supplemented the pleadings, they would certainly not have fared better had the district court ignored their attachments and treated their motion as one to dismiss").

6

362, 367-68 (2d Cir. 2003) (quoting Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 423 (2d Cir. 2002) (stating that a court may grant summary judgment "'only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'")). Of course, "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Opals on Ice Lingerie, 320 F.3d at 368 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" N.Y. Stock Exch., Inc. v. New York, N.Y. Hotel, LLC, 293 F.3d 550, 554 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248). The relevant substantive law will identify the facts that are material for the purposes of summary judgment. Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material factual

7

issue genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C.J.) (citing Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); accord LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995) ("'The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994))); Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984). If there exists "any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). The Court evaluates Roth's claims in light of this standard to determine whether she has demonstrated that she is entitled to a judgment as a matter of law.

C. Application of the Summary Judgment Standard

In order to succeed on its claim to enforce the Guaranty, Orix must demonstrate that Roth duly executed the Guaranty and failed to pay the debt that is due under it. See, e.g., Valley Nat. Bank v. Greenwich Ins. Co., 254 F.

8

Supp. 2d 448, 453 (S.D.N.Y. 2003); see also Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc., No. 01 Civ. 4788, 2006 WL 587483, at *9 (S.D.N.Y. Mar. 8, 2006). Accordingly, Orix appended to its Complaint and opposition to Roth's motion a copy of the Guaranty signed by Roth and notarized. However, Roth submitted an affidavit in support of her motion stating that she did not sign the Guaranty or authorize anyone to sign the Guaranty on her behalf. In addition, Roth states that Tracy Caprez ("Caprez"), the notary used on the Guaranty, is not a valid notary. Roth raised no issue of fact concerning the non-payment of the debt owed under the Guaranty. Thus, the only question to be resolved is whether there is a genuine issue of material fact concerning the enforceability and execution of the Guaranty.

Regarding Caprez, Roth claims that she "is not and has never been a valid notary in the State of Arkansas where the signature was signed." (Roth Aff.) In support of this contention, Roth included for the Court copies of documents from the State of Arkansas stating that Caprez's notary status is "pending" and Crawford County Circuit Court stating that Caprez never was a valid notary. In opposition, Orix states that "the documents provided from the office of the Secretary of State show that a surety

9

bond had been posted for this notary; the notary's status was shown as 'Pending', and that an expiration date of April 7, 2009 had been given for the notary's commission." (Degrave Aff. ¶ 9.) In reply, Roth reiterates that "according to Crawford County Circuit Clerks office as of 12.15.06 Tracy Caprez Notary Public has never been on file." (Roth Reply Aff. at 2.)

Roth also asserts that the Guaranty "that has my name on it, is not my signature." (Roth Aff.) Roth goes on to state: "I never signed my name on any of my husbands [sic] loans." (Id.) In support of her affidavit, Roth includes letters from her previous and current supervisors stating that it is their opinion that the signature on the Guaranty does not match Roth's signature; a police report filed by Roth with the Sallisaw, Oklahoma Police Department; a copy of a document proving her signature before a notary at the Crawford County Sheriff's Department; a copy of Roth's signature card and deposit agreement from the National Bank of Sallisaw; a copy of her expired driver's license; and a copy of her social security card, which she states she signed in 1974. (Roth Aff.)

In opposition, Orix states that "it is the plaintiff's strong belief that the defendant either signed the guaranty or authorized her signature to be placed on the document."

10

(Degrave Aff. ¶ 7.) Orix states that it sent a letter dated March 23, 2000 to Roth confirming the Guaranty and telling Roth to immediately notify Orix if there was any discrepancy regarding the Guaranty. (Id. Ex. E.) Orix asserts that it "never received any communication from Ms. Roth advising that this was not her signature on the guaranty." (Id. ¶ 13.) In addition, Orix sent a letter dated September 18, 2002, advising Roth that a balance was due pursuant to the Guaranty. (Id. Ex. G.) Orix states that "at no time within a year after sending this letter, did the defendant ever challenge the fact that she had guarantied the obligations of her husband, Michael Roth." (Id. ¶ 16.) Further, Orix contends that its computer records show that Roth had discussions with Orix representatives regarding the debt and "at no time did she notify the plaintiff that she had not executed a guaranty of the obligation." (Id. ¶ 14; Ex. F.)

In reply, citing the Arkansas Code Annotated, Roth states that "notary publics licensed in the State of Arkansas have a statutory duty to verify the identification of those persons whom they certify as executing documents." (Roth Reply Aff. at 2.) Roth argues that there is no verification to go with her signature on the Guaranty. (Id.) Roth also asserts that the certified mail receipts

11

that Orix provided as proof of service of the two letters Orix sent to Roth are defective.[3] (Id. at 3.) In addition, Roth states that Orix's computer records "are not legible" and contradict Orix's assertion that Roth did not contact Orix.[4] (Id.) Further, Roth cites "numerous civil cases filed" against Curtis Lloyd, a witness to the Guaranty, "for conspiracy to commit fraud[,] deceit and conversion and violation of the law." (Id. at 4.) Thus, Roth argues, "[t]here certainly seems to be a pattern of forgery." (Id.)

---

[3]  First, Roth asserts that the certified mail receipt for the March 23, 2000 letter, (Degrave Aff. Ex. E), is not traceable because it is missing two digits from the tracking number and, therefore, it is "[c]learly no evidence of receiving contact from Plaintiff." (Roth Reply Aff. at 3.) In support of her contention, Roth submitted a letter from Gail Scott, Postmaster in Muldrow, Oklahoma for the United States Postal Service (Roth Reply Aff. Ex. 2), stating that at the time certified mail receipt tracking numbers were nine digits long and traceable for two years, and therefore this receipt "is untraceable due to the time limitations." (Roth Reply Aff. Ex. 2.) The receipt that Orix submitted contained a nine digit tracking number and was sent more than two years before Roth's tracking request. Therefore, the receipt appears to be untraceable merely because of the Postal Service's record-keeping guidelines. Contrary to Roth's assertions, she has not put forth any evidence that undermines Orix's claim that it contacted her in March 2000.

Second, Roth asserts that because the certified mail receipt for the September 18, 2002 letter, (Degrave Aff. Ex. G), was returned unsigned, it demonstrates that Orix did not contact her. (Roth Reply Aff. at 3). However, in its opposition, Orix stated that the letter was sent by first class and certified mail and "the first class mail was retained by the defendant, but the certified mail was returned as being 'Unclaimed' by the defendant." (Degrave Aff. ¶ 15.) Thus, the "unclaimed" receipt does not necessarily indicate that Orix failed to contact Roth.

[4] Contrary to Roth's assertion, a portion of Orix's computer records are legible and indicate that Roth communicated with Orix personnel regarding payments to Orix, without challenging the legitimacy of the Guaranty. (Degrave Aff. ¶ 14.)

12

Resolving all ambiguities and drawing all reasonable inferences in favor of Orix, Roth has failed to carry her burden to demonstrate the absence of any material factual issue genuinely in dispute. If there exists "any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Holt, 95 F.3d at 129. Orix has put forth evidence from which a reasonable inference could be drawn in its favor that Roth either signed the Guaranty or authorized someone else to do so.

As stated above, Orix provided the Court with a copy of the notarized Guaranty. Under New York law, "[n]otarization of a signature raises a presumption that the signature is valid." Orix Credit Alliance, Inc. v. Khoury, No. 94 Civ. 2083, 1995 WL 2133 at *1 (S.D.N.Y. Jan. 3, 1995); see also Osborne v. Zornberg, 792 N.Y.S.2d 183, 184, 16 A.D.3d 643, 644 (2d Dep't 2005). "This presumption can be rebutted, however, 'after being weighed against any evidence adduced to show that the subject instrument was not duly executed.'" Khoury, 1995 WL 2133 at *1 (quoting Son Fong Lum v. Antonelli, 476 N.Y.S.2d 921, 923, 102 A.D.2d 258, 261 (2d Dep't 1984)).

Roth has challenged the presumption that a notarized signature is valid by asserting, in part, that the

13

notarization itself is invalid. There is evidence in the record, however, from which a reasonable inference could be drawn in Orix's favor on a material issue of fact. See Holt, 95 F.3d at 129. Caprez had posted a surety bond and was given a commission date and expiration date for her notary status. (Degrave Aff. ¶ 9.) Without more information regarding Caprez's notary status at the time that the Guaranty was executed, the Court cannot grant Roth judgment as a matter of law.

Roth further challenged the presumption that a notarized signature is valid by submitting evidence that the signature on the Guaranty does not match her signature. In support of her affidavit, Roth provides letters from her current and former supervisors who both state that it is their opinion that the signature on the Guaranty is not Roth's signature. (Roth Aff.) Roth also provides numerous samples of her signature, including those that were notarized before a police chief deputy. (Id.) However, this Court is not a handwriting expert, and Roth has not presented a handwriting expert who could testify regarding the authenticity of the execution of the Guaranty. See, e.g., In re Piazza, 181 B.R. 19, 21 (Bankr. E.D.N.Y. 1995). Although Roth has put forth evidence that raises questions regarding the validity of the Guaranty, she does not

"demonstrate the absence of any material factual issue genuinely in dispute." Heyman, 524 F.2d at 1320. Rather, she has highlighted the issues that remain in dispute.

Further, Orix has put forth evidence that it contacted Roth to confirm the Guaranty and that she did not contest the Guaranty until after this action began. As discussed above, Roth has failed to demonstrate that Orix did not contact her. Thus, a reasonable inference may be drawn in Orix's favor that Roth was put on notice and failed to contest the validity of the Guaranty prior to the filing of this action.

The question of enforceability and execution of the Guaranty cannot be resolved on the record before the Court. The parties would benefit from the opportunity to conduct discovery in this action. Therefore, Roth's motion for summary judgment is hereby DENIED. Roth is not precluded from filing a further motion for summary judgment at the conclusion of discovery.

**CONCLUSION**

For the reasons set forth herein, Roth's motion is hereby DENIED. The parties are ordered to appear before the Court for a pre-trial status conference on May 22, 2008 at 10:00 a.m.

**SO ORDERED.**

**New York, New York**
April **8**, 2008

*[signature]*
U.S.D.J.